This morning's docket is 517-0335 William Brammeier v. Charles Brammeier et al. Okay, Ms. Lawrence, are you ready? I am. Okay, let's see when you're ready. Come on up. May it please the Court, my name is Natalie Lawrence and I represent the plaintiff and appellant in this case, William Brammeier. So there's three things that I want to show the Court today in oral argument. First, that the trial court erred in failing to grant William's motion to enforce the party settlement agreement. Second, that the trial court erred in partitioning the property in time versus via a sale. And third, that the trial court erred in partitioning the property into eastern and western parcels without oalty between the parties. This is the case where I learned a new word. Oalty. This is my second one. So a little bit of background about this case. So William, my client, is the plaintiff and he sought a partition of the property at issue via a sale. Melissa is the defendant. She was the owner of a half interest. What about Charles? How does he figure into this? Charles is actually Melissa's husband. At some point in the proceedings below, or maybe before, I wasn't the attorney in the proceedings below, but at some point my understanding is that Charles granted Melissa his interest, whatever that may have been, in the property. So he's no longer a part. Yeah, he's really no longer interested in this lawsuit at all. And so Melissa is the defendant. She owns the other half interest in the parcel at issue, and she sought a partition in kind of the property. The parties reached a settlement agreement in January of 2017, and they called the court to let the judge know. Actually, Melissa's counsel called the judge to let him know. And then at some point something happened, and William ended up bringing a motion to enforce that settlement agreement, and that was in March of 2017. There was a hearing held. It wasn't on the record on March 29th, and the court ended up not granting William the relief he requested. The parties proceeded to an evidentiary hearing on the actual partition issue on June 21st of 2017, so about three months later. Counsel, where in the record is the ruling on the motion to enforce? There is no specific order, and I knew you were going to bring that up. So there is no specific order, but the docket sheet does say on the March 29th date that the parties were still in negotiations, and the parties did proceed to the partition hearing on June 21st. So I believe that that shows that the court did, in fact, deny the relief that was requested. I don't understand why he brought a petition to the partition when there was a contract settlement agreement. There wasn't when he brought the partition. Okay, so the timing was bad. Correct. So the partition action was filed sometime in the fall of 2016. Oh, I said February, okay. Yeah. And then, so the parties proceeded forward, and then they reached a settlement agreement in January of 2017. So you keep saying that they reached an agreement, a contract, but isn't that a court question? Sure, sure, and that's the first issue that I wanted to talk to you guys about, was the enforcement of the settlement agreement, whether it's enforceable at all is definitely an issue before the court today. But actually, instead of proceeding on that agreement to enforce it, they went to trial on the merits, didn't they? Well, they first had a motion to enforce the settlement agreement. The judge denied the relief that they requested, and then they proceeded forward after that time to the hearing in June. Isn't that Justice Moore's real question, though, is there wasn't a specific order on that? There was a notation in the record on the docket sheet. It says still in negotiations. Right. It seems like the judge didn't feel there was a final settlement. Right, and so that was the judge's ruling, but that's what I'm appealing, is the fact that the judge believed that there was not a final settlement agreement between the parties. And so his ruling on that issue was actually reviewed de novo, because he did not have an evidentiary hearing on the issue. So the existence of an enforceable settlement agreement is determined just like any other contract. You've got offer, acceptance, consideration, and you've got to have the essential terms of the contract. In this case, both parties executed the same memorandum of understanding, MOU, the version that had some handwritten changes on it from my client, William. Melissa actually accepted all of those changes. The only notation she wrote in the contract was need clarification next to one of the terms, and that term had to do with who was going to be receiving a portion of that current years. So how do you construe that that's acceptance if she says that she needs clarification of one of the terms of acceptance? Well, because that is a non-essential term of the contract according to Illinois law. For the contract to be enforceable, for the sale of real estate, it's a specific kind of contract. You need four things. You need the names of the parties, a description of the property, the price, and the signature of the party to be charged. And Melissa, in this case, actually not only signed it, but she signed it in front of a notary. And then after she signed it in front of a notary, she called the court. Her counsel called the court and said, hey, we have a settlement agreement here. So I believe that she did believe that there was a settlement agreement in this case. The fact that she put needs clarification next to one of the terms of the contract that was not one of those four things that you need to enforce the contract, I think that that shows that it was non-essential to the contract and the contract was final other than that one term. If it wasn't final, why would she sign it in front of a notary? Why would she sign that document other than with that little notation as to the one term of who's going to get one-sixth of that year's crop? So Melissa argues that if William really believed that there was a final settlement agreement, then he should have just simply dismissed the lawsuit completely. And that way it would have showed, yeah, I really think that this is finally settled. But it's not required under Illinois law to do that. And this is not a new or unusual procedure to prepare documents other than the settlement agreement itself, to arrange for payment between the parties before anything is dismissed. As we see, things can go wrong before settlement funds are received or before the parties actually effectuate the settlement that they agreed to. And so when a party has reached a settlement, Illinois law doesn't require that person to dismiss their lawsuit. And he can file a motion within that same lawsuit to enforce the settlement agreement. And that's under the Brewer case. It's an Illinois Supreme Court case, 165-02-100. So those are, as to the merits of the case, what our arguments are between the parties. Melissa also is bringing up some procedural issues that I want to address before moving on to some other issues. But the first of the procedural issues is that Melissa argues waiver because my client didn't bring up the settlement agreement at the June hearing on the partition. But I'm not sure how a waiver could have happened when an entire hearing was devoted to the issue of the settlement agreement on March 29th earlier that same year, about three months earlier. That hearing, or the ruling on that, was not appealable because it was not final. And that's according to the Ramirez case, 366-113-935. And also that case shows, if you look at the facts of it, that my client was not required to re-argue or otherwise bring up the fact that the settlement agreement was not enforced improperly, not enforced at the March hearing, at the 621 hearing. And that's according to the same case, Ramirez, at page 940. So Melissa also argues... Also, are you responding to the partition pleading? Did your client raise the settlement agreement in her answer? In the answer? In the response of the pleading? No, the response of the pleading, I believe, was already completed by the time the settlement agreement... The settlement agreement happened? Yes. Okay. Correct. And it was never amended during this June hearing, June 21 hearing? Right. Correct. Okay. So Melissa, the next procedural argument that she makes is that there is no counter-petition from her. So that means that she can't be stopped from trying to get the property divided in kind versus via a sale. And that's simply the only relief that Melissa asked for at the trial court level, was that the property be divided equitably in kind. She didn't ask for a dismissal. She didn't ask for some other kind of relief. She asked specifically for an equitable division. Just because Melissa didn't file a counter-petition doesn't mean she can avoid her own settlement agreement that she signed in front of a notary and then told the court about. The next thing that Melissa argues is that there's an insufficient record because there's no transcript of the 329 proceedings. And then she goes on to say that the parties may have reported to the court that they were still in negotiations. And my client vehemently disputes that that ever happened. And there is actually zero basis in the record for that assertion. Furthermore, the trial court is not required to hold an evidentiary hearing on the record or an evidentiary hearing at all or a hearing at all. Could bystanders reporting have been filed on this issue? Potentially. I don't know that the... I realize you weren't counsel at that time. Yeah, I wasn't counsel at that time. Could a bystander's report have been filed for this court? Potentially. So under Lawless 228 LF-300-500, a trial court is not required to hold an evidentiary hearing on the record, though. So a bystander's report, it really wouldn't have been required, even if it was something that would be available or that the judge would have signed off on. It's not required under Illinois law. If the trial court chooses to proceed without a hearing, then the review is de novo. And likewise, when review is de novo, you don't need a transcript of a hearing below because the record is adequate with the pleadings and the motions and the supporting documents that are on file. That's according to the Gunnella case 337 LF-385. So in conclusion, as to the settlement agreement issue, the trial court should have enforced it at the hearing on 329, and the case should have ended at that point. As to the actual underlying dispute regarding the partition, the first issue is whether the court should have ordered a partition in kind versus via a sale of the property, and that's reviewed under an abuse of discretion standard. So the procedure for a partition action is the trial court has to find that the property can be divided without manifest injustice to the parties. Therefore, in making that decision, the trial court has discretion. But that discretion can be abused if the trial court doesn't properly consider evidence before it in making that manifest injustice decision. So quick summary at the hearing on the partition in June of last year. William asked for a sale of the property. Melissa asked for a north-south division of the property. Then the trial court, after the parties had finished their testimony, determined that an east-west division of the property would be best, even though neither of the parties had asked for that. The trial court then asked for the parties' thoughts on the east-west division of the property and then refused to consider William's answers to that question. And what he said was the east-west division would be inequitable because there's a waterway that would prohibit access to the southern portion of the eastern parcel. So if you split the property in half, north-south like this, you create east-west parcels. The lower half of one of those two parcels would be inaccessible because of a waterway. And the trial court said, well, there was no testimony to that effect. Well, the parties didn't testify as to lack of access to the parcels in that way because nobody had asked for that. The trial court made that up after the parties were done testifying. I'm going to ask you that. There was reference to an Exhibit A showing this aerial, but when I went to look for it, it said it was under seal. Is that true? I couldn't see the exhibit. Is it in the record? It's in the record, yes. It's actually in my appendix. I have a copy of it, an A6. Okay, that's the Exhibit A in the appendix. Yes. Okay, that's great. A6 in the appendix shows the aerial photo that I'm talking about. If you could take a look at the aerial photo, I think it would really help with what I'm trying to explain. So if you look at the eastern parcel, it's split. Yes, that's it. Oh, wait. I'm sorry, Judge. Can I approach this? Can I approach that? Yes, you may. Okay, so where's the waterway? In your mind, if you can divide the parcel into eastern and western, portions, if you look at the eastern portion, about halfway down there's kind of a U-shaped marking. If I can approach again, I'll show you. Yes. I don't see it. It's right here. Oh, okay, that's the waterway. Okay, so... The parties had actually testified regarding that waterway during their cases in chief before the court, during their regular testimony, and both parties referred to the fact that the waterway existed. Melissa even said the waterway was huge. Again, may not have referred to the waterway preventing ingress and egress at the time, but that was because there was no need, because neither of the parties had proposed an east-west division of the property. So the court basically ignored that testimony when he split the property into east-west parcels, and then after asking for input from William regarding the east-west split, told William that, well, there was no testimony as to... So if there was a south-west, a north-south split, the waterway egress and ingress would not have been an issue. Correct. Correct, yes, and that was... For either party. Correct, yes, because there's a road both on the northern end and on the western end of the property, so you could access it either way if that was the case. So Melissa argues that William should have reopened the proofs at that point, and there's not any case that I can find saying that reopening of proofs is necessary if the court asks the question. In fact, the case that I was able to find says that a trial court is permitted to question witnesses in order to elicit the truth and bring enlightenment to material issues. Wasn't that an evidentiary issue, and wouldn't that be abuse of discretion standard? I guess I'm not understanding the question. Wouldn't the standard of review about an evidentiary matter be abuse of discretion? Yes, so the partition in kind versus sale is the abuse of discretion standard. It's different from the settlement agreement issue. You're correct. So in closing on that issue, at least one court has held that partition in kind is improper and inappropriate if it creates issues with ingress and egress to the parcels that are created from the partition. Let me ask you this. Are both parties unhappy with the East-West? No, it's just my client is unhappy because he's the only one. Just my client is unhappy. He's the only one that has the ingress and egress access issue because of that waterway that's only on his side. There's no road or anything. Correct, and he actually... Essentially, it's different than what both parties asked for. Correct, yes. And in addition to the egress, ingress, is there the LT consideration too because of the water? Right, exactly. So that goes right into my next issue regarding LT. It might be called LT. I don't know. In my head, it was LT. So William's position, obviously, is that the parcels can't be divided in kind without manifest injustice. But assuming the purposes of argument that there's disagreement on that, the party's testimony itself, even before the court kind of blindsided everyone and did the East-West division, shows that the parcels as divided are not equal in value. So the party said in their testimony that 23.5 acres of pasture, which were mostly on the Eastern parcel, were worth less than the 76 acres of tillable, which are mostly on the Western parcel. And they should have been allowed to submit evidence on how the parcels actually differ in value with that East-West division. But the court kind of cut my client off whenever he tried to say, hey, look, I'm going to have to build a road and a culvert and that sort of thing. And building improvements like that are part of the OLT calculation, and that's under the Harris case, 42.3751. Basically, in that case, there was an OLT granted and the amount necessary to construct a garage on a parcel that was awarded to a party that had no garage on it and the other side had one. So that was part of the OLT in that case. So... Oh, go ahead. That's all for now. Thank you. Thank you very much. Counsel, your honors. Be careful what you wish for because you just might get it. Justice Cates, you asked a question. What did he put in his responsive pleading regarding the partition and regarding the alleged settlement agreement? He didn't file a responsive pleading. He filed the petition for a partition. He's the one that asked for a partition, and he got it. I do partitions in trial court quite often. I wasn't in this case particularly, but when I sit down with a client, I tell them partition is relatively straightforward. Assuming that the petition has in it the proper names of the parties and the proper legal description, there's going to be a definite end, and one of two things is going to happen. Either it's going to be divided, or it's going to be sold. That's it. That's the only two options in a partition suit. So he asked for the partition, and that's what he got. He got a partition. He was the petitioner of the partition suit. But that doesn't rule out the possibility of a settlement. I mean, any time you file a lawsuit, you expect an outcome that may or may not involve litigation. Correct. There could always be a settlement up to the final hearing. But the fact that it got to the final hearing is his, to put it plainly, his fault. He could have dismissed his petition at any time, and he should have. The reason they were there on June 21st was not because of my client. It was because of Mr. Bramier, who asked for the petition. And if he truly thought that there was a settlement agreement, like he claims, he should have dismissed his petition for partition and filed a breach of contract claim. A breach of contract. Okay. Or added account, perhaps. Or added account amended, yes. As I was corrected, this partition suit was filed before the settlement agreement. Correct. The settlement agreement came during the partition suit. And it's not... But the other thing that is a concern is you have evidence going on where the parties have negotiated, at least, a north-south arrangement. So presumably the evidence would be toward the north-south partition. And then all of a sudden you have a judge who goes east-west. So where's the basis in the evidence for that? I mean, why did the judge do that when the evidence was north-south? Well, it's my understanding that when my client asked for north-south, they also wanted some money because they said the southern portion was worth less than the northern portion. Okay. So in my opinion, if you look at the aerial, there's tillable ground in the northern portion and then there's pasture in the bottom. If you cut it right down the middle with an east and a west parcel, you've got tillable and pasture on both sides. But you don't have any road along the, I guess what's called the eastern edge. I mean, you have this short piece of road at the top on the east-west, but, I mean, you have a long way to go. But that's not an issue because Ms. Lorenza's client owns the property to the east. It doesn't matter, though, when you're looking at one parcel. I mean, that's an added plus for her. But when we're just looking at this parcel, the fact that somebody might own the one next to it... But there was no evidence in the record that said he really couldn't get to the south. First he said... That's my point, is the evidence is toward the north-south development. I mean, the north-south values, the north-south whatever. And then all of a sudden, the judge, who admittedly says there was no evidence about the waterway, well, in the north-south, there's no reason to because you're going to cut the waterway. Well, I don't know if it's really accurate to say that the access was okay if you do north-south because you would have had to have a road going along... I'm saying it wasn't okay. Oh, you're saying north-south. Yeah, because you either had to have an easement to get to the southern portion or you would have had to... Well, there's no... There's a long road on the western side if I'm looking at this right. Which belongs to that parcel. So you would have had to draw... You would have had to cut that road out and then have a southern parcel. You would have had to go from the main road at the top down the west side to the southern portion. But it runs all the way along the... It runs all the way along. Correct. And it went with the western parcel, which is what my clients ultimately got, which they're happy with. And then the eastern parcel, which I understand what you're saying, just looking at this parcel alone, but the judge, I know, did take into consideration the fact that he did own land abutting that to the east, which would have taken out any issues with access. Well, access may be different than cost and expense of building the road and the bridge and that type of thing. Correct. But, again, there was no evidence in the record. I mean, you have to make a decision, in my opinion, based on what was in the record. And there was... He didn't put any evidence in the record regarding any sort of access. And in my opinion, that should have been brought up in the partition trial. When you're doing a partition trial, you should have a comprehensive appraisal of what the pasture was worth and what the tillable ground was worth. And you should bring up any potential issues with any access. And none of that was brought up in trial. The judge did the best with what he had that was properly before. And he had a map, he drew a line. He had a 100-acre block, and he drew a line right down the middle. And he could have just as easily gone and promised. But then I suppose... That's where the evidence was based. Well, then I think he did have an issue with, you know, pasture versus tillable ground. I mean, I think by doing it this way, he gave each party a little bit of both. And again, and I understand Your Honor's position that it didn't necessarily matter that he owned land to the east. But I know that the judge took that into consideration. I mean, it shouldn't. It shouldn't. Right. It shouldn't. You should look at this piece of property. But now he has two contiguous parcels, which means he has more ground together as opposed to... And it runs direct... I mean, the lengths run completely together. So... What about the contract? What about the enforcement of the contract? Well, I don't know that filing a motion enforces the proper way to do it. And... Well, regardless of the pleading status, I mean, your opposing counsel is correct that in order to have a valid contract, settlement contract, there are not too many requirements involved. And this did seem kind of immaterial. Crops versus the entire settlement. Well, I don't know how you have a meeting of the minds when somebody takes a pen and writes in there, need clarification. To me, that right there shows that there was no agreement. They didn't have an agreement. And the fact that... I mean, there were two separate versions of an alleged memorandum of understanding attached to the motion to enforce. Which one was the judge supposed to choose? There were two different... They were dated differently and there was different writing on each one. They were close, granted, but they weren't there yet. And they were obviously not there because then in March, we're back in court, and they file a motion to enforce, which there was no hearing on. There's nothing in the record about what happened in regard to that motion to enforce. I don't know what happened. Is there any consideration exchanged on that broken memorandum of understanding? I think maybe they... I think there was, yeah. I think there might have been, but that's not the record. I just happen to know that because that's an issue. I mean, here's the problem. I think we're going to end up back in trial court over this specific issue. I mean, because of the fact that there was some money that exchanged hands, and, you know, right now, they're treating the property as two separate parcels. We were in court on a motion to say, and the judge denied it and said, no, I'm going to leave it the way I ruled. And right now, my clients are occupying the west half and Ms. Lorenz's clients are occupying the east half. So they are coexisting right now, and things seem to be going well. There was a surveyor out there that drew the line, but the judge ultimately denied a motion to stay, and right now, that's the way it stands. And all this that you're talking about, about money being exchanged, that's not in the record? That's not in the record, no. And all this about what's going on now is not in the record? That's not in the record as well. I mean, and that's my point here is if you just look at the record and make your ruling based on the record, I don't know that you can find that the judge didn't do anything right. There was no... Granted, there was no specific evidence that this was what they wanted, but there's no specific evidence that it was a manifest injustice. I mean, where's the evidence? There was no evidence presented at trial on this specific issue. And I go back to the part where I said initially, she's the one... Well, I think that... I mean, if I were sitting in a trial court as one of the attorneys and I'm presenting evidence consistent with what I think is a settlement agreement of North-South, that would never even occur to me that a judge would go, he's worse. I mean... Well, the settlement agreement... Why did that happen? The settlement agreement wasn't North-South. The alleged settlement agreement was that my client was going to buy her client completely out. But the descriptions, as I understand it, talked about the North versus the South. That's what... The analogies of that. That's what my client wanted. He wanted it to be sold. And my client said, we want the Southern half. Right. That's what I was talking about, North-South. Yeah. And then she went on to say, I think it's worth less. And so we want some money on top of it. And I think that's where she may have bolstered the evidence a little bit by saying the waterway is huge. I mean, that's because she was trying to say that we want the Southern half with the huge waterway and then we want some money. But again, there was no evidence. You know, she said she wants some money, but where's the appraiser testifying that this Southern half is worth less than the Northern half? It's not there. The evidence is not in the record. The only thing you have in the record is an aerial photo and the judge taking a look at it and going, you know what, if I draw right down the middle, it gives each party some tillable acreage, some pasture, and Mr. Bramier has acreage directly to the East, which solves his issue with access, and the road goes with the West, which solves my client's access issues. So I think that there is evidence in the record, but very little evidence that's in the record to support the judge's ruling that what he did was equitable. It was not a manifest injustice. And, you know, as far as the OLT payment, again, there's no evidence in the record. Where was the appraiser in this case?  there should have been an appraiser sitting on the stand for hours testifying about what the value of the tillable acreage was, what the value of the pasture was, what the value of the pasture acreage was. There's a shed that nobody valued. There were no commissioners appointed. Nobody asked for any commissioners. Not to mention the fact that the settlement, the alleged settlement agreement was never even brought up at trial. Nobody said a word. Nobody said a word about the alleged settlement agreement at the trial on June 21st. We have the March date where we have a very, very limited record. The only thing we have is the notation in the docket that says party spill and settlement. Why the judge made that docket entry, I don't know. I wasn't there and we don't have a record to figure out why. But I think the law says that the record at that point, we have to assume the judge made a proper ruling based on the facts in the law and it's the appellant's job to bolster the record which they didn't do. So at this point, I think that was a non-issue. The alleged settlement agreement was a non-issue at that point. And then they go to trial on June 21st and the fact that they were at trial again is not my client's fault. She wasn't the petitioner. He could have dismissed it at any point right before and up to trial but he didn't. He asked for a partition and that's what he got. He got a partition right down the middle and we don't have any evidence in the record that says that it was inequitable, that it was a manifest injustice. And I think what you refer to Justice Gates when you say the North-South, that's actually what my client asked for. Not him. My client asked for the North-South division. He asked for it to be sold. But then we got the East-West and my client's okay with it. So the settlement agreement to me is not an issue for this court today. I feel like we're in trial court right now. It's just going through the terms that are in the alleged settlement agreement that was attached to the motion to enforce. That should have been done in Washington County. Not here. There wasn't an evidentiary hearing there. So we can only assume that when the judge made the docket entry that the parties are still in settlement, that he did that based on the law and the facts. And maybe the parties even said we're still in settlement and we're still in negotiations. Again, I don't know I wasn't there. I can't say. But the hearing in June clearly was on the pleadings. As you say, it had nothing to do with the contract. Correct. It had nothing to do with the contract wasn't brought up at that hearing. I read the record from the hearing on June 21st. Nobody breathed a word. Well, judge, remember we had this MOU that we were trying to get entered in and we had a settlement agreement and this is what we were talking about doing. Nobody said that. That should have been brought up at the very beginning of the hearing by Ms. Lorenz's client to me to preserve that specific issue. But they didn't say anything about it. And again, you know, yes, there has been money exchanged, but I can tell you this, that's going to be another we're going to be back in court and trial for trying to get that resolved. But again, that's not the issue before the court today. The issue before the court today is did the trial judge do manifest injustice by dividing a case in the middle and creating an east and west parcel. And without any more evidence in the record, I don't know that you can say that he did abuse his discretion. We don't have an appraiser, we don't have a commissioner. Somebody should ask for a commissioner. That should have happened right away. These cases, in my opinion should have happened right away. It either gets sold or gets divided. And in this case it got divided. Now, granted, it's not what Mr. Bramier wanted, but he did specifically ask in his petition that the property either be sold or divided. That was one of his prayers for relief. So again, he asked for this to happen right away.     application  Bramier and then he    to Mr. Bramier and then he gave a written application to his attorney. But they didn't do it. They complained to his wife. And not that it matters but they don't really get along. Obviously they wouldn't have been in court for partition  got along. That's typically the nature of how partition comes to fruition is the parties don't get along and somebody files. So, your attorney is not going to        that that is what you have in front of you. I don't think you can find that the trial court can't do    think     the trial court can't do that. I don't think you